(No. 38863.— )

The Department of Public Works and Buildings, Appellee, *vs.* William S. Christensen *et al.*, Appellants.

*Opinion filed May 25, 1962.—Rehearing denied September 27, 1962.*

KLINGBIEL, J., took no part.

BOZEMAN, NEIGHBOUR & PATTON, of Moline, (VIRGIL BOZEMAN and JOHN V. PATTON, of counsel,) for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES and AUBREY KAPLAN, Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

On September 1, 1959, the Department of Public Works and Buildings filed a petition in the circuit court of Rock Island County to condemn 2.01 acres of the defendants' five-acre tract for the improvement of a State highway. The Department moved for immediate vesting of title under the statute, (Ill. Rev. Stat. 1959, chap. 47, sec. 2.1) and the court appointed three appraisers who estimated the value

of the 2.01 acres taken and the damages to the remainder of the tract. The Department's motion was granted May 4, 1960, and the trial court made a preliminary statutory finding, based on the appointed appraisers' estimates, that total compensation and damages amounted to $34,250. Deposit based upon this preliminary finding was made pursuant to the statute, and the Department took possession of the property.

The case then proceeded to trial before a jury which returned a single verdict fixing the value of the land taken plus the damages to the remainder at $21,500. The defendants' motion for a new trial was denied. They appealed to the Appellate Court, but on the Department's motion the case was properly transferred to this court. (Ill. Rev. Stat. 1961, chap. 47, sec. 12.) ) The defendants assert that the verdict was inadequate, and that a new trial should have been granted because of the perjury and misconduct of a juror.

Upon the trial both the plaintiff and the defendants introduced the testimony of expert witnesses as to the value of the defendants' entire tract at the time of the taking, the value of the 2.01 acres taken, and the value of the remainder of the five-acre tract after the taking and the improvement of the highway. The three witnesses who testified for the State fixed the total award for the property taken plus the damage to the remainder at $19,300, $19,568, and $19,072, respectively. Defendants' three witnesses testified to totals of $47,500, $52,500, and $57,600.

The property was used as a trailer camp, a nonconforming use under the zoning ordinance. The portion taken fronted upon the existing highway, and access to the widened Federal interstate route was limited to a single point. On the portion taken there was a six-room house, a building that housed plumbing and laundry facilities for the occupants of the trailers, a small cabin and a hen house. There was general agreement among the witnesses that the

value of the property lay in its potential for commercial development, and the value of the existing improvements was largely discounted by the witnesses for both parties.

It is settled that when a jury's verdict is within the range of the evidence, and the jury has viewed the premises, the verdict will not be disturbed on appeal except in cases of passion, prejudice or clear and palpable mistake. (*Trustees of Schools of Township 36* v. *LaSalle National Bank,* 21 Ill.2d 552; *Department of Public Works and Buildings* v. *Pellini,* 7 Ill.2d 367; *Department of Public Works and Buildings* v. *Lambert,* 411 Ill. 183.) The defendants emphasize the importance that the jury's view of the premises has played in the development of this established practice, and they urge that more critical judicial scrutiny of jury verdicts is appropriate where, as here, the jury had no opportunity to see the property in the condition in which it existed when the condemnation petition was filed. They suggest that under these circumstances the valuations made by the court appointed appraisers in the preliminary proceedings in connection with the immediate vesting of title should serve as a touchstone in measuring the adequacy of the verdict. They also rely upon those cases in which eminent domain verdicts have been set aside because it appeared that the evidence produced by one side or the other had been ignored by the jury, such as *Super-Power Co.* v. *Sommers,* 352 Ill. 610, and *S. I. & K. R. R. Co.* v. *Johnson,* 321 Ill. 187.

It is true that the jury was not able to view the property as it existed before the taking, and that the numerous pictures that were received in evidence were not an entirely adequate substitute. But we are not willing to accede to the defendants' suggestion that in such a case the valuations of the court appointed appraisers "should now take the place of the prior 'jury view' as the test for the adequacy of the verdict." This suggestion, if adopted, would allow the property owner to submit the question of just compensation to a jury, with substantial assurance that if the jury

rejected the testimony of his witnesses, the report of the appraisers would nevertheless tend to provide a guaranteed minimum.

We think that the statutory appraisal was not intended to serve such a purpose. The statute provides: "Such preliminary finding of just compensation, and any deposit made or security provided pursuant thereto, shall not be evidence in the further proceedings to ascertain finally the just compensation to be paid, and shall not be disclosed in any manner to a jury impaneled in such proceedings; and if appraisers have been appointed as herein authorized, their report shall not be evidence in such further proceedings, but the appraisers may be called as witnesses by the parties to the proceedings." (Ill. Rev. Stat. 1959, chap. 47, sec. 2.2(d).) If the defendants had seen fit to do so, they could have called the court appointed appraisers to testify before the jury, but the initial appraisal was made only for the purpose of ensuring an adequate deposit for the protection of the property owner in connection with the immediate vesting of title.

Nor do we think that this case is one in which the jury ignored the testimony offered in behalf of the defendants; rather it appears to be one in which the testimony of the defendants' witnesses was found wanting when it was weighed against the other evidence in the record. In advancing the proposition that the jury ignored the testimony of their witnesses, the defendants consider only the opinions of the opposing witnesses and do not mention the evidence concerning sales of comparable property that was also put before the jury. In ruling upon the motion for a new trial, the trial judge stated: "As to the weight of the evidence, the plaintiff had some disinterested witnesses who were not in the real estate business professionally. They were business men who had bought and sold for their own use, not as agents or brokers. The plaintiff's appraisers testified in marked conformity with these disinterested witnesses. The testimony of defense appraisers suffered by comparison."

In our opinion the defendants have not established that the verdict was inadequate.

The defendants also urge that a new trial should have been granted because of the "perjury and misconduct" of a juror. To support this contention they offered the affidavit of one of their attorneys and the affidavit of one of the jurors. The attorney's affidavit stated that at his request the trial judge asked each prospective juror "in substance" whether the juror or any close relatives had "had any dealings with the State of Illinois" or "any transactions with the State of Illinois involving land desired to be taken by the State of Illinois," The affidavit also stated that each juror who was accepted answered the question in the negative, and that if any juror had not so answered, that juror would not have been accepted. Finally, it asserted that a brother of one of the jurors, Sylvia Edwards, "had had at least two such dealings with the State of Illinois or one of the Departments thereof and that those dealings appear in Book 349 of Deeds at page 321 through 325 and again in Book 388 of Deeds at page 254."

The affidavit of Richard Krohn, a member of the jury, stated that during the deliberations of the jury, Sylvia Edwards said that her brother had real property condemned by the State of Illinois and that he had been treated fairly by the State and had been offered a fair price; that she maintained that the lowest valuation of damages by the State's witnesses should be adopted because the State had treated her brother fairly, and that she "finally agreed in order to break the deadlock, to allow a further nominal sum as damages."

The Department presented the affidavit of George Bruckmann, the foreman of the jury, who stated that Sylvia Edwards did not adversely affect the verdict from defendants' standpoint, and that the verdict was based upon the jury's consideration of all of the evidence.

The Department takes the position that jurors' affidavits may not be used to impeach their verdict, relying upon *Sanitary District* v. *Cullerton,* 147 Ill. 385. Although this doctrine is generally recognized, it is subject to an exception when it is charged that a juror has answered falsely on *voir dire* about a matter of potential bias or prejudice. *People* v. *Beacham,* 358 Ill. 373; *Maher* v. *New York Chicago and St. Louis Railroad Co.* 290 Ill. App. 267; *West Chicago Street Railroad Co.* v. *Huhnke,* 82 Ill. App. 404; 8 Wigmore on Evidence, § 2354 at n. 5; Annot., 48 A.L.R. 2d 964.

The record does not show the exact questions put to the jurors on their *voir dire* examination. The trial judge stated that he had no recollection of the questions that he put to the jurors, but that he accepted counsel's statement that he asked the juror whether she or any close relative had had dealings with the State of Illinois. We think that in the absence of a more specific showing of what took place on *voir dire,* it is inappropriate to speak of perjury. Moreover, an affirmative answer to a question of the tenor here involved would not disqualify a juror, and, as the trial judge pointed out, the juror would have no idea of the purpose of the question. Our decisions make it clear that a motion for new trial will be denied unless it is established not only that the juror answered falsely, but also that prejudice resulted. (*Kuzminski* v. *Waser,* 314 Ill. App. 438; *Maher* v. *New York, Chicago and St. Louis Railroad Co.* 290 Ill. App. 267; *Stanczak* v. *Pennsylvania Railroad Co.* (7th cir.) 174 F.2d 43.) After considering the only evidence put before him on this issue, the affidavit of a single juror and the countering affidavit of the foreman, the trial judge decided that the defendants had not shown that they were prejudiced. He pointed out that this was not a case involving a deadlocked jury, since the jury was out for a total of two hours and forty minutes, including a short recess

and the time used in choosing a foreman. This was a matter primarily within his discretion, and there is no indication on this record that he abused that discretion.

The judgment of circuit court of Rock Island County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE KLINGBIEL took no part in the consideration or decision of this case.